**Floyd Charles FALLEN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 19527.**

United States Court of Appeals
Fifth Circuit.

April 6, 1965.

———◆———

W. E. Grissett, Jr., Jacksonville, Fla., for appellant.

William J. Hamilton, Jr., Sp. Asst. to U. S. Atty., Southern Dist. of Fla., William A. Meadows, Jr., U. S. Atty., Southern Dist. of Fla., for appellee.

Before JONES and WISDOM, Circuit Judges, and SHEEHY, District Judge.

SHEEHY, District Judge.

This case is now before us for disposition on the merits, the Supreme Court having reversed the action of this Court in dismissing the appeal for want of timely filing of notice of appeal.[1]

On the night of September 2, 1960, the Post Office at Whitehouse, Florida, was burglarized. Thereafter, a grand jury in the Southern District of Florida returned two indictments in connection with said Post Office burglary. In one indictment it was charged that the appellant Fallen and James Theodore Dickson unlawfully conspired with Donald Jackson Alford to commit certain offenses against the United States, namely, (a) to embezzle, steal and knowingly convert to their own use Money Orders, U. S. Postage Stamps and U. S. Savings Stamps of the United States Postal Department in violation of 18 U.S.C.A. § 641; (b) to receive, conceal and retain money and other things of value of the United States Postal Department with the intent to convert them to their own use, knowing them to have been stolen, in violation of 18 U.S.C.A. § 641; (c) to forge and counterfeit U. S. Money Orders by endorsing thereon signatures of fictitious persons, in violation of 18 U.S.C.A. § 500; and (d) to pass, utter and publish, with intent to defraud, forged and altered Money Orders, knowing the material signatures thereon to be false and forged, in violation of 18 U.S.C.A. § 500. The other indictment charged appellant, Dickson, and Alford in the first count with having forceably broken into the Post Office at Whitehouse, Florida, with the intent to commit larceny in violation of 18 U.S.C.A. § 2115, and in the second count with having stolen and converted to their own use money and things of the United States Post Office Department of a value in excess of $100.00, in violation of 18 U.S.C.A. § 641. Alford plead guilty to the offenses charged in the last mentioned indictment and received a three year sentence which was suspended with probation. Dickson also plead guilty to both counts in the last mentioned indictment and received a sentence of five years to serve. Appellant having plead not guilty in both cases, said cases, without objection on the part of appellant, were tried together. The jury found the appellant guilty of the offenses charged in the two cases. Thereupon, sentences aggregating twenty years, the maximum allowed, were imposed.

The first point raised by appellant through his court appointed attorney[2] relates to certain statements Dickson made in the presence of the jury.

Dickson, having been taken to prison prior to appellant's trial to serve the sentence imposed on him as aforesaid, and, apparently having been brought out of prison on a Writ of Habeas Corpus Ad Testificandum issued at the request of the Government, was called as a witness by the Government. On direct examination Dickson stated his name and, when asked whether he knew appellant, turned to the trial judge and, in the presence of the jury, made certain statements to him indicating that he did not want to testify in the case.[3] At the time such statements

1. Fallen v. United States (1964) 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760.

2. The attorney representing appellant on appeal was appointed by this Court and did not represent appellant at his trial.

3. That portion of the colloquy between Dickson and the trial judge pertinent to the question raised by appellant is as follows:
"Q Mr. Dickson, do you know the defendant, Mr. Fallen?
"A I would like to speak to the Judge if it's all right with you in regards to this case.

"THE COURT: You want to speak with me?
"THE WITNESS: Yes sir. Your Honor, I was sentenced to five years in the penitentiary before the Honorable Judge Bryan Simpson here, and when I was sentenced to the penitentiary, I pleaded guilty to all indictments in this case. I wasn't sentenced under any kind of an agreement. I came in here fair and square and pleaded guilty and was sentenced to the penitentiary to serve a five year sentence. Now they brought me back here on a habeas corpus to testify against Fallen.

were made appellant made no objections to them. Furthermore, appellant made no request of the trial judge to instruct the jury to disregard said statements and made no motion for mistrial.

Appellant's contention that Dickson, by making the statements with reference to his reluctance to testify, particularly those indicating that he feared for his life if he testified, cast insinuations that the appellant would likely cause his death if he testified, and as a result thereof appellant was denied a fair and impartial trial. We believe such contention to be without merit. It is a matter of common knowledge that as a general rule prison inmates look with great disfavor on a prison inmate testifying on behalf of the Government in a criminal prosecution. When the statements made by Dickson are considered as a whole, it is more reasonable to infer that Dickson's fears were of reprisals that might be taken against him by his fellow inmates in prison and not of harm to be inflicted upon him by appellant. However, if it could be said, as contended by appellant, that the jury could have inferred from Dickson's statements that if he testified, appellant would probably cause his death, we would not in the cir-

cumstances of this case hold the making of such statements to be reversible error. The harmful effect, if any, of such statements could have been cured by appropriate instruction to the jury, and the appellant, not only did not object to said statements, but at no time requested the Court to give any instructions to the jury relative thereto. See Namet v. United States (1964) 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278.

By his next two points appellant complains of certain questions as to the credibility to be assigned to a witness who was an accomplice the Government counsel propounded to the jury panel on voir dire examination and of certain statements concerning the character of the appellant said counsel made in his closing argument to the jury and contends that such questions and statements or the cumulative effect thereof prevented appellant from receiving a fair and impartial trial. Appellant at no time objected to said complained of questions and statements, or any of them. It would serve no useful purpose to set forth herein such questions and statements. We have carefully reviewed the entire record, including the testimony of appel-

"Now, you understand I am in a penitentiary with twenty-three hundred men or more, which I have seen a few killed since I have been there. And there's no grounds here for me to testify for the Government, because I have no reason to. There was no agreements made between the prosecution and me to testify, Your Honor, and I was brought here against my will, and there's no one promised me anything, and I promised nothing. I pleaded guilty, Your Honor, before the Honorable Judge, and he sentenced me to five years. There was no agreement that I ever come back here, because he wrote me a letter to the penitentiary and told me, 'As far as your case is concerned,'—I wrote him for a time cut—he said, 'I am through with it, and don't write me no more; you've got your time; now go on and serve it.'

"THE COURT: Of course, they have the right to bring you back to testify.

"THE WITNESS: Well, I wish that I wouldn't have to testify, Your Honor, because—
"THE COURT: Under the law, I believe you would have to testify.
"THE WITNESS: Well, if there is any way out of it—My life is at stake in the penitentiary, Your Honor.
"THE COURT: I beg your pardon?
"THE WITNESS: My life is at stake in the penitentiary.
"THE COURT: There's no way out of it.
"THE WITNESS: Will I have—Your Honor, can I plead the Fifth Amendment, that I may incriminate myself in this case. I plead it.
"THE COURT: You have the right to do that, if that would incriminate you.
"THE WITNESS: It might incriminate me further, Your Honor. I plead the Fifth Amendment."

lant. The evidence of appellant's guilt of each of the offenses charged is strong and very substantial. While some of the Government counsel's complained of conduct bordered on impropriety, we are convinced that none of such conduct or the cumulative effect of all or any portions thereof constituted plain error affecting the substantial rights of the appellant. The appellant was entitled only "to a fair trial, not a perfect one." Lutwak v. United States (1953) 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593.

 Appellant, by his fourth and last point, contends that the evidence shows that the conspiracy or the alleged conspiracy was to rob the Post Office at Whitehouse and that the facts do not support the conviction for a continuing conspiracy to break into the Post Office and steal the stamps and convert them to their own use. This contention likewise has no merit. In asserting that the robbery of the Post Office terminated the conspiracy charged in the indictment, appellant has misconceived the thrust of the conspiracy charge. As above indicated the indictment alleged the object of the conspiracy to be the embezzling, theft and conversion of the money orders and stamps obtained in the burglary, the receipt and concealment of monies and other property of the Post Office Department and the forging and passing of money orders. Thus, the indictment, by its terms, contemplated more than the mere burglary of a post office, and there was sufficient evidence, including the testimony of the appellant, to the effect that the conspirators, including appellant, contemplated as an object of the conspiracy the forging and passing of the stolen money orders and the converting of the stolen stamps to their own use.

Finding no reversible error in this record, the judgments of conviction are

Affirmed.