of every proceeding therein." Bankruptcy Rule 1001.

No rule of bankruptcy practice and procedure is designed to be considered in isolation. Each rule is to be considered in conjunction with every other rule. What the entire body of rules makes available to the practitioner and the bankruptcy judge is a *gestalt* designed to constitute a functional whole. The rules are not a melange of independent parts. The Advisory Committee alluded to this in its preface to the rules: "The proposed rules ... are not divided into chapters related to the different types of debtor relief chapters in the Code. These rules apply in all chapter cases except as a particular rule otherwise provides." Preface to Rules and Forms, 11 U.S.C. XXI. One of the trustee's most vigorous arguments, therefore, is explicitly contradicted by the Preface to the Rules. He argues that Rule 1019(4) does not apply to Chapter 7 cases. This is the rule that specifies that claims filed in the superseded case shall be deemed filed in the Chapter 7 case. The Advisory Committee's preface clearly reveals that the rules apply in all chapter cases "except as a particular rule provides otherwise." Rule 3002(a), requiring the filing of a claim in a Chapter 7 case, does not "provide[ ] otherwise." So construed, there is but one proper resolution of this case.

## V.

▇ We conclude that, as here, where a claim included in the debtor's lists and schedules in a Chapter 11 proceeding is not disputed, contingent, or unliquidated, and is therefore deemed filed, it is not necessary for the claimant to file a separate claim if the proceedings are converted into a Chapter 7 case. Accordingly, we hold that appellant's claim for wages was timely filed.

The judgment of the district court will be reversed and the cause remanded to the

district court with a direction to enter judgment in favor of appellant in its appeal from the order of the bankruptcy judge.[7]

Walter GRANDISON, Appellant,

v.

Margaret MOORE, Member P.R.C., George Petsock, Warden, James Wigton, Member P.R.C., Robert Maroney, Member P.R.C., Sgt. Salvey, Capt. Callithen.

No. 85–3434.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Feb. 20, 1986.

Decided March 14, 1986.

---

Walter Grandison, pro se.

Jose Hernandez-Cuebas, Office of Atty. Gen., Pittsburgh, Pa., for appellees.

Before HUNTER, GARTH, and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal raises two issues: First, whether the 10 day period specified in the Magistrate's Act, 28 U.S.C. § 636(b)(1), for filing objections to a Magistrate's Report is jurisdictional, and second, the date service on a prisoner is considered to have been made. The latter issue is one that implicates various federal procedural rules.

Walter Grandison, an inmate at the State Correctional Institution at Graterford, Pennsylvania, brought this action under 42 U.S.C. § 1983 against three members of the Program Review Committee, and the warden, a sergeant and a captain at the State Correctional Institution at Pittsburgh, Pennsylvania (SCIP). Grandison claims that he was denied procedural due process on two occasions when he was transferred to SCIP and placed in administrative custody there as a security risk. Grandison claims he did not receive notice or a hearing on the first occasion, December 3, 1980. He admits that on the second occasion, September 23, 1981, he received notice and appeared before three members of the Program Review Committee, which

was responsible for determining whether he should be administratively confined, but claims that the hearing was inadequate.

The district court referred the case to a magistrate for an evidentiary hearing, proposed findings of fact, conclusions of law, and recommendation for disposition. The magistrate found that "[p]laintiff established and defendants did not contest that at the time of his December 3, 1980, transfer to solitary confinement he received no notice of the reason for his placement in administrative segregation and no opportunity to present his views to the prison officials." The magistrate concluded, however, that plaintiff failed to establish that any of the defendants to this action participated in his placement in administrative custody on December 3, 1980. With respect to plaintiff's placement in segregation on September 23, 1981 for a period of 16 days, the magistrate found that Grandison appeared before the Program Review Committee on September 24, 1981 and was given an opportunity to present his views. Therefore she concluded that defendants did not deprive plaintiff of due process.

The magistrate's report was dated June 17, 1985. The final paragraphs, containing the recommendation, provided as follows:

It is recommended that judgment be entered against plaintiff and on behalf of the defendants.

In accordance with the Magistrates Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Rule 4 of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.

On July 3, 1985, the district court adopted the magistrate's proposed findings of fact and conclusions of law, adopted the report and recommendation of the magistrate as the opinion of the court, and entered judgment in favor of the defendants and against the plaintiff. The court stated that "[n]o objections have been filed."

On July 8, 1985, plaintiff's objections to the magistrate's proposed findings of fact,

conclusions of law and recommendations for disposition were filed. These were dated July 3, 1985 and were accompanied by plaintiff's certificate of service on defense counsel on July 3, 1985. On July 19, 1985, plaintiff filed Objections to the District Court's Memorandum Order in which he alleged that he was served with the magistrate's report and recommendation on June 28, 1985. He further explained that his mail was sent to the "Western Pen address" [SCIP] where he had been transferred for an evidentiary hearing but that he had already been returned to Graterford when his forwarded mail arrived at SCIP.

The district court dismissed plaintiff's objections by order dated July 24, 1985, accompanied by the following memorandum:

On July 8, 1985, plaintiff filed untimely objections to the magistrate's Proposed Findings of Fact, Conclusions of Law and Recommendation for Disposition dated June 17, 1985. The magistrate's report was served on plaintiff on June 20, 1985 and his objections were therefore due on July 1, 1985 since June 30, 1985 was a Sunday. His objections were executed on July 3, 1985 and filed with the Clerk on July 8, 1985. Both the Magistrate's Act, 28 U.S.C. Section 636(b)(1) and this court's Local Rules for Magistrates, Rule 4(b) require a party to file objections to a report and recommendation within ten days after service. The report of the magistrate also advised plaintiff that he had ten days to file objections. Since his objections were untimely they shall be dismissed.

■ It appears that the district court treated the 10 day statutory period for filing objections to the magistrate's report as jurisdictional. We see no good reason why it should be so regarded. Nothing in the statutory language or legislative history suggests that the 10 day provision is one that speaks in jurisdictional terms. Under these circumstances, analogous statutory provisions establishing time requirements have been treated as statutes of limitations subject to recognized equitable doctrines.

*See, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). We agree with the holding in *Zelaskowski v. Johns-Manville, Corp.,* 578 F.Supp. 11, 13 (D.N.J.1983), that "late filing is permissible if the moving party adequately justifies his request for relaxation of the time constraints."

Cases that hold that failure to file objections to the magistrate's report may be considered as a waiver of appellate review do not suggest that the timeliness of objections is jurisdictional. *See, e.g., Goney v. Clark,* 749 F.2d 5 (3d Cir.1984). In *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981), cited by defendants, the court permitted the United States to appeal notwithstanding its failure to file objections, holding that the waiver rule would be applied prospectively only. Subsequently, that court made clear in *Patterson v. Mintzes,* 717 F.2d 284, 286–88 (6th Cir.1983), that the 10 day period of § 636(b)(1) may be extended by the district court. *See also Nettles v. Wainright,* 677 F.2d 404, 410 (5th Cir.1982) (holding that the ten day requirement does not bar a challenge based on plain error or manifest injustice).

We emphasize that we are not holding that the ten day requirement does not need to be strictly observed. In this respect, we hold only that failure to object within ten days is not a jurisdictional defect. Thus, the district court should have considered whether Grandison adequately justified his delayed filing of the objections, if indeed they were late.

■ Grandison's objections to the district court's order explain that he actually received the magistrate's report and recommendation on June 28, 1985 because his mail had been sent to the state correctional institution at Pittsburgh, Pennsylvania where he had been temporarily housed for the purpose of attending an evidentiary hearing. However, by the time his mail arrived there, he had already been returned to Graterford. Grandison alleges that he mailed his objections on July 3, 1985, well within 10 days of his actual receipt of the report on June 28, 1985. The envelope was

postmarked on July 5, 1985, and the objections were filed on July 8, also within 10 days of his receipt of the report. Grandison's brief on appeal attaches as an exhibit a duplicated copy of a franked envelope from the district court in Pittsburgh to Grandison which shows that it was initially mailed to Graterford, then forwarded to SCIP [presumably by a Graterford official], and then returned to Graterford where it was receipted as received on June 28. An inquiry into Grandison's objections to the district court's order would have disclosed these facts. Under these circumstances, even assuming the objections were not timely filed as a matter of law, it was an abuse of discretion of the district court not to treat them as timely and to consider them on the merits.

Moreover, these facts present us with the recurring problem of service of legal mail on pro se prisoners, as to which there is a surprising dearth of precedent. Fed.R. Civ.P. 5(b) merely provides that service of papers other than the complaint may be made by mailing a copy to the party and that such service is complete upon mailing. Rule 6(e) provides that when service is made by mail, 3 days shall be added to the period prescribed for a response or subsequent act.

Even for the general population, the 3 day period allowed for mail delivery reflects an optimism about postal service that regrettably no longer accords with our experience. When applied to prisoner mail, that time may be critically inadequate. Prisoners have no control over when prison officials will actually deliver mail. Also, they have no control over their whereabouts, and may be temporarily transferred out of the prison for court proceedings or placed in administrative or punitive segregation which can delay mail delivery.

The Supreme Court recognized the unique circumstances of prisoners when it created an exception to the time for filing a notice of appeal by holding in *Fallen v. United States*, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964), that a notice of appeal was timely when a prisoner did all that he could to deliver a notice to the district court on time. *See also Rothman v. United States*, 508 F.2d 648 (3d Cir. 1975). While *Fallen* involved a mailing from a prisoner and its receipt in the Clerk's Office, whereas this case involves service on the prisoner, the general principles are similar. The Federal Rules expressly provide that they shall be construed to secure the just determination of every action, Fed.R.Civ.P. 1. Although the problem of insufficient time to meet the short ten day time periods has been ameliorated to some extent by the recent amendment to Fed.R.Civ.P. 6(a), which now excludes intermediate Saturdays, Sundays and legal holidays when the period of time prescribed is less than 11 days, justice requires that the district courts bear in mind the particular circumstances regarding prisoner receipt of mail in those instances where they have discretion in that regard.[1]

Because the district court apparently did not consider the merits of Grandison's objections to the Magistrate's Report, we will remand for its consideration in the first instance.[2]

---

**1.** Magistrate Ila Jeanne Sensenich, who coincidentally was the magistrate in this case, was a member of the committee that prepared the report for the Federal Judicial Center on Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts. Her letter to a member of the staff of the Report, which is included in full in the Report, notes that because of the delay in delivery of magistrate's reports [and presumably other legal mail] by the institution to the inmate, she always treats the date the prisoner actually received the document as the date of service, rather than the date it was received by the institution. *Id.* at 21

n. 34. *See Thompson v. Rose*, 505 F.Supp. 183, 184 (W.D.1981).

**2.** On remand, the district court may consider it necessary to decide whether, once plaintiff showed that defendants James Wigton and Robert Maroney were members of the Program Review Committee in December 1980, the magistrate should have placed on them the burden of showing that they did not participate in the decision to place Grandison in segregation on that occasion. There also appears to be a question whether Grandison was in fact given the requisite opportunity to be heard within the meaning of *Hewitt v. Helms*, 459 U.S. 460, 103

For the reasons set forth above, we will vacate the district court's order granting judgment for the defendants, and will remand for further proceedings in accordance with this opinion. Each party to bear its own costs.

S.Ct. 864, 74 L.Ed.2d 675 (1983), on September 24, 1981 before his confinement to administrative segregation.